# UNITED STATES DISTRICT COURT
for the
District of New Mexico

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
OCT 22 2018

| | |
|---|---|
| United States of America )<br>v. )<br>Bruce Michael Alexander ) Case No. 18mj3426<br> )<br> )<br> )<br>*Defendant(s)* ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __October 21, 2018__ in the county of __Bernalillo__ in the
_____ District of __New Mexico__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C., § 2244(b) | Abusive Sexual Contact |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Michael Hopkins, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 22, 2018

_____
*Judge's signature*

City and state: Albuquerque, New Mexico

**KAREN B. MOLZEN**
**U.S. MAGISTRATE JUDGE**
*Printed name and title*

STATE OF NEW MEXICO )
                         )    SS
COUNTY OF BERNALILLO)

## AFFIDAVIT

I, Michael Hopkins, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, deposes and say:

1. I am Special Agent of the FBI, currently assigned to the Albuquerque Field Office. I have been so employed for approximately three years. Prior to that I served as an Officer in the United States Army. I am currently assigned as the Airport Liaison Agent, tasked to address aviation related matters. I was previously assigned to the Safe Streets Task Force (Safe Streets) for one year. I have received training during my time with the FBI to include: Human Intelligence Operations, Drug and narcotics trafficking investigations, Firearms investigations, Special Weapons and Tactics training, Counterterrorism investigations, as well as investigations in criminal financing.

2. I am responsible for investigating crimes that involve, among other things, Abusive Sexual Contact in special aircraft jurisdiction.

3. The information in this Affidavit is drawn from my interview of the victim, the defendant, information received from other law enforcement agents/officers, my experience and training and the experience of other agents. Because of the Affidavit's limited purpose, it does not contain all facts I know about this investigation.

4. Finally, the summaries of conversations do not include all potentially criminal conversations and may not represent the entire conversation that occurred between identified individuals.

5. Based on the information contained in this Affidavit, I submit that there is probable cause to believe that: on October 21, 2018, BRUCE MICHAEL ALEXANDER, on an aircraft in the special aircraft jurisdiction of the United States, to wit, Southwest Airlines Flight 5421, bound to Albuquerque, New Mexico from Houston, Texas, made sexual contact with another passenger, by touching the passenger's breast, without their permission, in violation of Title 18, United States Code (U.S.C.) § 2244(b) as defined in Title 18 U.S.C. § 2246, Title 49 U.S.C. § 46501 and 46506 (Count One).

## PROBABLE CAUSE

6. On October 21, 2018, while on Southwest Airlines Flight 5421 bound to Albuquerque, New Mexico from Houston, Texas, BRUCE MICHAEL ALEXANDER made abusive sexual contact with VICTIM C.W.

7. According to C.W., while a passenger on Flight 5421, she felt a hand from behind her grab the right-side of her right breast. C.W. was seated in a window seat, in the row in front of ALEXANDER. ALEXANDER was also seated in a window seat. C.W. shared the row with a man, G.L. who sat in the aisle. ALEXANDER shared the row with a man who remains unidentified. C.W. fell asleep after boarding the aircraft and approximately 15 to 20 minutes into the flight, felt a movement of the right side of her sweater. She felt her clothes move and a touching of fingers on her right side at and around her 'bra line." C.W. saw a hand and assumed the touching was an accident. Approximately 30 minutes after the first touch, C.W. felt fingers slowly grab the back of her arm, squeezing above the elbow, then slowly and "attentively" grope her right side, again at and around her ribs and "bra line." C.W. demonstrated the area that was touched to law enforcement

2

agents/officers no less than three times and gestured at an area inclusive of her right breast. C.W. said she saw a hand that had thick fingers, were hairy and dirty finger nails.

8. In my training an experience, victims of sexual assault and similar crimes have great difficulty in saying, in words, the exact parts of themselves that were touched. Gestures and demonstrations is a more comfortable method of explaining contact. Gestures and demonstrations are often limited and not to the full extent of what actually occurred. My training has also taught me that people rarely remember inconsequential details unless the details are relevant or traumatic.

9. According to C.W., after she felt the second touch, she rose from her seat, turned around and told the passenger behind her that she didn't know why he thought it was ok [to touch her] and he needed to stop. C.W. then asked a Southwest Airlines crewmember to be reseated to another section of the aircraft. The crew member relocated C.W. to a seat in the rear of the aircraft.

10. According to C.W., she had not been drinking alcohol or taking any sleep aids. ALEXANDER was a total stranger and unknown to her. C.W. was wearing a red sweater that was loose fitting, being oversized and baggy. Her upper body was covered by the garment.

11. According to the WITNESS G.L., he did not see ALEXANDER touch C.W., but did observe C.W. get up out of seat, make comments to ALEXANDER that ALEXANDER not touch C.W.. G.L then witnessed C.W. inform a flight attendant of the situation and be reseated.

3

12. Southwest Airlines employees at Albuquerque International Sunport stated that the flight attendant who spoke with C.W. and inevitably relocated her seat assignment was L.E.

13. According to ALEXANDER, who provided a written statement after being read his Miranda Rights, who being provided his reading glasses and reading his Miranda Rights, and agreeing to waive his rights, stated he was seated in a window seat, behind a woman. ALEXANDER slept most of the flight from Houston to Albuquerque. ALEXANDER recalled ordering a coke from the flight attendant and later handing the cup back to the attendant. ALEXANDER could not specifically recall getting into his backpack, a carry on item he stowed under the seat in from of him. At a point during the flight, the woman in front of him spoke to him and was then reseated to another part of the aircraft. After the aircraft landed, he was detained by uniformed officers. ALEXANDER could not described the woman who spoke to him.

14. According to ALEXANDER, he had not been drinking alcohol or taking any sleep aids. C.W. was a total stranger and unknown to him.

15. Upon visual examination of ALEXANDER's hands, his fingers were of a diameter that could be considered thick. ALEXANDER is older and worked as a heavy equipment operator, as well as being heavier set than what might be considered an average build. ALEXANDER's hands did not appear overly hair, though his skin was pale and his hair was darker, presenting more of a contrast. Several of ALEXANDER's finger nail had dark build up underneath the nail and appeared dirty.

4

16. After being placed in hand cuffs, ALEXANDER asked what the sentence was for the charge he was being arrested for. Later, in the vehicle, ALEXANDER stated that the President of the United States says it's ok to grab women by their private parts.

17. Based on the facts outlined above, the Affiant executed a Probable Cause arrest of BRUCE MICHAEL ALEXANDER in violation of Title 18, United States Code (U.S.C.) § 2244(b) as defined in Title 18 U.S.C. § 2246, Title 49 U.S.C. § 46501 and 46506 (Count One).

Respectfully submitted,

Michael Hopkins
Special Agent
FBI

Subscribed and sworn to before me
on October 22, 2018:

UNITED STATES MAGISTRATE JUDGE

5